Good afternoon. You may call the case. Thank you. 1454-57 Tony Bon Corruthers v. Bruce Westbrooks Warden. Arguments not to exceed 30 minutes per side. Mr. Passano for the appellant. Chief Judge Cole, may it please the court. My name is Michael Passano and Paul Bote and I represent Tony Bon Corruthers. With the court's permission, I'd like to ask five minutes for rebuttal. That is fine and you may proceed. And I just wanted to inform the court that I will be arguing the chronic issue. We'll be submitting the rest of the issues on brief subject to any questions that the court has, of course. On December 19th, 1995, 20 days before trial was to commence, William Massey, Tony Corruthers' counsel, filed a motion to withdraw from the case, alleging Corruthers' bizarre, outrageous and confrontational behavior, as well as threats to Massey himself. At the time, Massey had conducted absolutely no investigation of Tony's lengthy personal history or mental health history or the family history. In fact, he knew nothing about Tony Corruthers at all. There were further hearings on the motion to withdraw on January 2nd and January 3rd. Corruthers was seldom, if ever, addressed in those hearings. And then they took a different turn. And on January 8th, 1996, Judge Daly stripped Tony Corruthers of his right to counsel based on the allegations of Massey, mostly out-of-court allegations as well as prior conduct, which had been discussed with the judge in ex-party hearings and on telephone calls, but there's no record of those discussions. And Judge Daly just recited the facts as he recalled them in his ruling. These hearings were a critical stage of the proceedings. Indeed, they affected everything that occurred. I need to point out, of course, that the court knows, is that after counsel was removed from the case, the state filed a motion to continue the trial for separate reasons, dealing with the witness problem. The trial was continued, so the trial did not actually occur until April 15th. Under chronic, the trial is unfair and violates the structural guarantee of the Sixth Amendment if the accused is denied counsel at a critical stage of proceedings. A critical stage, of course, is if what happens in that hearing affects the whole trial. The United States Supreme Court in Wade v. United States said that a little differently, and they said with regard to the chronic concern and the Sixth Amendment right to counsel, at any stage of the proceedings, the Constitution guarantees that the defendant not stand alone. In the record, it is quite clear that counsel was not offered to Carruthers. Carruthers, to the extent that he was even addressed, which was seldom, or given an opportunity to speak, said, I want counsel. I can't do this myself. Counsel, to what extent was this issue raised either on direct appeal or state post-conviction? My question really is, do we have... Jurisdiction to hear it. Is there an issue of procedural default? Yes, sir. It was not raised pre-trial, of course, in the new trial motion on direct appeal or in post-conviction. It was a grand slam of default. The issue then becomes whether or not, under the facts and circumstances of Martinez and the case law, whether or not procedural default is excused in this case. The court probably has much more expertise on Martinez than I do, but the plain fact is that Martinez, of course, is an equitable rule adopted by the court pursuant to the power of the writ to preserve the very foundation of the adversary system, that is, the right to counsel. A procedural fault, then, the court said in Martinez, does not preclude the consideration of a claim if the initial collateral proceedings, in those proceedings, there was either no counsel or counsel was ineffective. So if post-conviction counsel was not offered or if counsel were ineffective, that opens... Just so I'm focused. Yes, sir. Help me. You're talking about the ineffectiveness of state collateral counsel at this point. Or post-conviction counsel. Please excuse me. Yes, sir. State post-conviction counsel. Yes, sir. And you're saying that we can look at their ineffectiveness because of Martinez. Yes, sir. In fact, that's either... And the argument stands or falls based on whether Martinez applies to that. Well, Martinez opens the door... Right. You still have to meet some other hurdles. Yes. Yes, sir. If you lose on that, you've lost on the chronic issue. If we can't open the Martinez door, the answer is yes. And the door opens in two ways. One, if there's no counsel, but obviously there was. Let me ask this. Yes, sir. I don't know if it's the same question, my colleagues. I take Martinez, especially with the gloss of Trevino, as being focused on the idea that it applies only when an issue could not, either practically or legally, have been raised on direct appeal. That was the whole what was going on in Trevino as distinguished from Martinez. There were these court cases that said, oh, there's no formal requirement that it be brought up on collateral attack. It could have been brought, and arguments about that. And I thought the whole distinction went to whether or the extent to which something couldn't really have been brought up until collateral attack. Isn't that a fair reading of those cases? I hesitate to say that I respectfully disagree with that, but I do. And the reason that I do is this. I think that the door opener, the can opener, is what happens to a claim that is generally reserved for post-conviction. But it is not exclusively so limited. So that, for example, if there is a claim. If you read it that way, though, then you lose on this issue. We read Martinez and Trevino not necessarily as limited to ineffective assistance of counsel. I understand that argument. It may not be limited, I don't know, to effective assistance of counsel cases. But it seems to me that it's limited to situations where you could not, in some sense, bring it on direct appeal. And whether it's formally prevented from bringing it on direct appeal or, as a practical matter, making it impossible to bring it up on direct appeal, those are issues. But that there has to be something in the sense of you couldn't bring it up on direct appeal. As in a procedural barrier of some kind. Right. And I think. And you're not arguing that this could not have been brought on direct appeal, or you are saying it could not? No, I'm certainly not arguing that. I think it could have been rated. If I'm correct in my reading of Trevino and Martinez that way, then that also is the end of this issue for you. Is that correct? I do not agree. I think that Martinez. If you agreed. Excuse me? If you agreed, then that would be the end of this issue for you. Ah, okay. Excuse me. I misunderstood your question, Judge Rogers. I'm sorry. No, it wouldn't be. But Martinez would not be the issue then. The issue would be whether or not the complete denial of counsel at trial, at a critical stage of the proceeding, was a structural error that could not be forfeited. Could not be procedurally defaulted, I thought. Right, right. Procedurally defaulted. Well, it seems that issues that are structural and foundational are issues that can't be either forfeited, impliedly waived, or procedurally defaulted. Or implicit waiver. In terms of AEDPA and procedural default, do you have any cases which say that procedural, that where you have what otherwise is procedural default, you can get around it if it's a structural issue? There's one. It's from the circuit. It's Judge Batchelder, but the issue is different. It's not a Sixth Amendment issue. It's a right to an impartial judge here. The case was Raley v. Webb. If you hold on a second, I think. Well, we can find it. You're saying in that case, even though it was defaulted and there was no cause and prejudice to get around the default, nonetheless it could still be raised under AEDPA? Yes, sir. In fact, what Judge Batchelder held in that case was with regard to, it was a habeas case, first of all. The issue was out of Kentucky and whether or not the petitioner had received an impartial judge. The issue was defaulted under state rules but not waived, that is, expressly waived. Judge Batchelder said, given that AEDPA consideration was proper and she went on to decide the merits, she did not decide in the petitioner's favor on the merits, but she went on to decide the merits of the case. Yes, sir. I think there are two paths. That's a holding, but I'd have to look at it. Well, she cited United States v. Oncala for the proposition. She did not cite, I do not believe, but I can't remember for certain, Justice Scalia's decision in FRITAG v. CIR. I'm asking the question about whether there's anything left because it seems to me that it's difficult to rely on Martinez. You're primarily relying on Martinez for this issue. Yes, sir. That's correct. We'll have to look and see. So what is, if you can shortly summarize, what is it that makes you base your claim on Martinez and why would Martinez save your claim? Because as I read Martinez, Martinez says that the ineffective assistance of post-conviction counsel in not raising the ineffectiveness or an ineffectiveness claim of trial counsel constitutes cause that allows the consideration of a substantial underlying ineffectiveness claim. And that in this case, basically the right to counsel and ineffective assistance of counsel are synonymous. The United States Supreme Court has said that repeatedly, as has its court in the Beasley decision. I wondered if there was perhaps talking past each other because it seems like there's some discussion of denial of counsel versus ineffective assistance. But I understand your argument to be in this particular factual circumstance, they're exactly the same thing. Well, factually and legally and consistent with the framework of Martinez itself. In other words, Martinez is aimed at protecting the Sixth Amendment right. In order to do that, the ineffectiveness of post-conviction counsel or the absence of post-conviction counsel, equating those two things, opens the door for the consideration if the underlying claim is substantial. So our... I just want to make one thing clear. Yes, sir. When you say those cases are not different, the big difference that I'm asking about between this claim and some ineffective assistance of counsel claims is that some ineffective counsel's claims in the United States, you in effect are required not to bring them on direct appeal but to wait until you get to collateral attack, whereas you've already indicated today that that's not the case with respect to this claim. It is not, and I understood you, Judge Rogers. Just to be clear, I may be being inartful about this, but I understand precisely your point. Yes, sir. So... Why doesn't that point close the door to your claim? It doesn't close the door in our view because it is not what Martinez says, that Martinez says if there is ineffectiveness at the post-conviction level, it opens the door for the consideration of a substantial ineffectiveness claim at the trial court level. And the issue is not, as Judge Rogers suggests, which is not to argue with him, but it is not whether or not that underlying ineffectiveness claim is barred. The question is whether it's substantial. If post-conviction is the place where ineffectiveness claims must be brought, and it is, all right, and it is in Tennessee, then if those claims are not presented, then Martinez says if there's an underlying meritorious ineffectiveness claim, it has to be considered as an equitable proposition. And the reason for that is that otherwise a foundational principle of trial law will be ignored and no court will have considered the case. And so that we're clear, I think you've answered the question, let's just say for the purposes of argument, you can't, you're not able to go through that Martinez gateway, can't open that door. Yes, sir. Where does that leave you? Is it the opinion you referenced that Judge Batchelder authored? Is there another pathway that you would argue that you can somehow obtain relief? Yes, sir. The two pathways are Martinez or that a claim of the complete denial of the Sixth Amendment right to counsel cannot be barred procedurally from consideration by the federal court. Because it's a structural defect. Yes, that's right. Right. It is structural and foundational. And as Justice Scalia said in Freitag, there are certain constitutional rights that can be forfeited or impliedly waived. And he lists them. He doesn't list all of them, of course. And then he says there are certain rights that cannot be. And he lists the Fifth Amendment. Most notably about this case also, the Tennessee Supreme Court miscited, misread, and misapplied that case. In the context of the separate right to counsel issue under Arkersinger, which they didn't address, the Supreme Court cited Freitag for the proposition that the Fifth Amendment right to counsel can be waived. It cannot. Did you argue this in your brief? Yes, sir. Where is that? Railey's not in here. Maybe I'm looking through it. Well, I honestly can't tell you. It's been a while since. The reply brief makes that analogy. Does it not? Yes. Yes, Your Honor. A final explanation of that, and clearly says that Freitag or Freitag was miscited. Right. Because the Tennessee Supreme Court put a period before the, but others may not, the right to trial by jury, the right to counsel. Yes, Your Honor. That's correct. Did you argue that below? Yes. We've argued it at every chance we had the opportunity to do so in front of Judge McCullough. Yes, sir. It's strange that the only case you have that supports it is never cited. Are you talking about Railey? Yes. I apologize if it's not in there. I couldn't give you the citation, but it stands for the proposition that I've stated. So the proposition is that procedural default doesn't apply if the protection is strong enough. That's precisely correct. But your core position is that Martinez works to open the door for you. Absolutely. Yes, absolutely. There's another arm, but my understanding of your pleadings was that Martinez opens the door for you. Absolutely. We didn't think that we needed to get to the question that Judge McCullough raised. It's a serious one. We don't see it that way. We don't read Martinez that way. And we read Martinez as applying both to the chronic claim on his face, because it's a Sixth Amendment claim, and the related ineffectiveness claims that arise out of our chronic claims. So either way, it is our position that the right to counsel and the right to effective assistance to counsel are equivalent, both as a matter of law, as a matter of a multiple Supreme Court case, as this Court's case in Beasley, and the structure of Martinez itself, which uses ineffective assistance of counsel or the denial of counsel as the gateway to this equitable exception. I had said that I would just confine the argument to chronic, but to the extent that I have a little time left, I would like to address, unless the Court has any other questions about the chronic issue, I would like to address the Argersinger issue, which is that the Tennessee Supreme Court's decision basically upholding, stripping Mr. Carruthers of counsel, was proper because he impliedly waived or forfeited his rights by his conduct. Our position is that that is squarely contrary to a number of Supreme Court decisions, starting with the Argersinger decision,  which is a condition precedent to imprisoning a person for any offense, be it petty, a misdemeanor, or a felony, and that that right is foundational, and that circumstance is actually an essential jurisdictional prerequisite to a conviction under Johnson v. Erbst, and that absent a record showing, which this one doesn't, that the defendant knowingly and intelligently waived the right to counsel, the conviction of an unrepresented defendant here is void. The trial court's determination of waiver under Erbst is not a pro forma matter, but the court is required, which it did not do here, to impose a protecting duty on the fundamental right of the right to counsel, and not, as happened in Mr. Carruthers' case, to attack him, which it did in a series of hearings beginning on December 19th. In fact, at the beginning of December 19th hearing, the court addressed the defendants and said, I don't want to hear a word out of you, and if I do, you'll be removed from the courtroom. And from that hearing through the rest of the hearing, what happened was that Mr. Carruthers basically sat mute until after the judge stripped him of counsel, the judge then finally after four hearings, that is appearances in court, he turned to Mr. Carruthers and said, do you have anything to say? Now, I mean, do we need to, should we look at this in context? Mr. Massey was what the, part of the fourth set of attorneys for Carruthers. Yes, sir. Excuse me. And so in the eyes of the trial judge, there had been these continuing efforts by Mr. Carruthers to delay proceeding to trial. And by at least I think in the view of the trial judge, Mr. Carruthers having this conflict or in disagreement with one counsel after another, those counsels would withdraw. Eventually there were these concerns that Mr. Carruthers was making threats to counsel. So this is, I'm not so sure we can just look at this strictly as an isolated incident. This was a trial judge who had been dealing with this, these issues of representation for quite some time. Let me say, I couldn't agree with you more, but there is an issue here related to what you just said. And that is number one, there was a change in conduct when counsel was removed. Number two, the prior complaints about counsel by the counsel of Mr. Carruthers occurred off the record in unrecorded proceedings. Number three, in the course of deciding what would happen to Mr. Carruthers on January 8th, the court cataloged out of court, unrecorded statements with regard to his misconduct. I respectfully submit, if you go back to Powell and Cook versus United States, one of the basic elements of representation, not to mention chronic, is to have a lawyer there to say, well, wait a minute, wait a minute. There's a burden of proof here. This is based on out of court conduct here. You are about to impose, in fact, and in effect a death sentence on this man based on this catalog of statements himself, his statements himself, accusing him of quasi criminal conduct, if not criminal conduct, in which Massey himself got a lawyer. And the court said, well, wait, Mr. Massey, you don't need a lawyer. Is it the particular facts of this case that bother you, or is it categorically not permitted for a judge under binding Supreme Court precedent, this is AEDPA, right? Yes, sir. That it's not permitted for a court to deprive someone of a lawyer if, say for instance, they repeatedly threaten their lawyer to cause their lawyer to decline representation. I'm not saying that happened here. It looks like maybe it did, but let's put aside whether it happened here. In the abstract situation where the defendant just repeatedly scares away his lawyer with threats. Right. Well, does Argersinger require that you just keep going, just continue to let that person do it, or does it not? Well, I mean, one might say, well, Argersinger didn't deal with that situation. I understand what you're saying. Or any of these other cases didn't deal with it, so therefore you would logically come to the conclusion that the Supreme Court hasn't addressed that situation. It's addressed other situations. And if the Supreme Court hasn't addressed it, then you lose under AEDPA, right? Well, right. But they have. They've addressed it in cases where the activities of the defendant made it practically impossible to get a lawyer? No, sir. I keep interrupting you, and I don't mean to do that. Don't take offense. Go ahead. I'm interrupting you a lot. Well, that's your job. The issue here that you raise is a crucial one on several levels. First, on clearly established law, is the glass half empty or half full? The plain fact here is that, like, for example, the ineffective assistance of counsel, the rule in Argersinger applies across the board. There can be countless, myriad circumstances of ineffective assistance of counsel that fit under that rule. So, first of all, yes, we think Argersinger applies. But I need to get to your point, because what you're saying is basically it's a wild risk, or arguably so, if that's the rule. I think you can go up through direct appeal, but under AEDPA, we owe this enormous deference. Unless the state court has violated something that, not we, but the Supreme Court has said, then we just have to give deference to that and put our trust, the Congress, which has the power, puts their trust in the courts of the states to apply federal constitutional law subject to direct appeal to the Supreme Court. But when you're doing it under AEDPA, under habeas, if there's not something clear that requires this result, we don't come to that result. And here you seem to be arguing, well, we do have something which requires it. It's these cases, but it's all cases that don't involve gross obstructionism, right? Alleged gross obstructionism. There you go. Excuse me. Alleged gross obstructionism. None of them involve that. Right. Right? So we can argue about whether the alleged gross obstruction was truly gross obstruction, but if there's no case that's in the area of alleged gross obstruction, how can you say that a decision of the state court is an unreasonable application of U.S. Supreme Court precedents dealing with the Constitution? We come back to, I'm hoping to really address your concern here. We come back from your concern to a core concern of this case, which is chronic. That is, if there had been a lawyer present to discuss and raise the issues and to represent the defendant in this proceeding, then the record and the issues wouldn't be simply that he's an obstreperous person. It would also show that since age 12 or 13 he was psychotic and offensive and aggressive verbally, and that his behavior, the symbol, the signal that the trial court looked at, was a product of mental illness. And the problem in this case, and I think other cases, that chronic really helps address is, for example, in the United States Supreme Court said in Powell v. Alabama, where we're looking for the due process right to counsel is contempt proceedings. And the reason is the court is trying to manage the proceedings, and it can either use civil or criminal contempt. But if it's out of court, which was here, there has to be a lawyer. There have to be charges, not to make this more unduly complex, but to enable you to do exactly what you're doing now. Now, I think I'm way over. I asked you a lot of questions. Why don't we hear from the respondent? And I apologize. No, no, no. We have lots of questions for you. Why don't we hear from you in rebuttal? You'll have your full five minutes. And let's hear from the respondent. I did not mean to be going over. We asked. Don't worry about it. Judge Rogers was bad during me. Some would say that. May it please the court. John Bledsoe from the Tennessee Attorney General's Office. On behalf of the state, I will address the issues in turn. As counsel made clear on the first issue regarding the deprivation of counsel during the pretrial proceedings on the withdrawal motions, for counsel to withdraw, the claim was not exhausted in state court. It's now procedurally defaulted. As I understand the argument, it's twofold as to why the default is now excused. And the first is an invocation of Martinez. Of course, any invocation of Martinez has to be looked at in the context of how the court resolved Martinez. And specifically, its retention of the Coleman Rule generally and creating a very limited exception for a claim of ineffective assistance of trial counsel. I'm not aware that this court, since Martinez, has extended that to any other type of claim and has rejected repeated attempts to. I think any invocation of that argument, as done here, you have to go back and look to the analysis of Martinez and why the court reached the conclusion that it did. And first and foremost, as Judge Rogers indicated earlier, was the notion that a claim of ineffective assistance of trial counsel could not be raised prior to the collateral review process. That is not the case here. That is not the case in Tennessee. My understanding was that that is the case in Tennessee. Well, the term used by the state courts for ineffective assistance of counsel is it's fraught with peril to raise a claim of ineffective assistance of counsel. I actually disagree with that because you have the mechanism to and some defense counsel who are successor counsel post-trial choose to. I thought our case law said that these were not issues to be raised on direct appeal, that Tennessee was a state that looked to post-conviction. Am I misunderstanding something? I would, pointing to Sutton, I think the court has said that with regard to ineffective assistance of counsel. But this is a deprivation of counsel claim. I think that was my struggle earlier. I feel like we're talking past each other. Give me your best case and or explanation for why this is not simultaneously a deprivation of counsel and ineffective assistance. Because each of those – the claim of deprivation of counsel, as I understand the claim, it's in essence here counsel – I'm sorry, the trial court should have appointed additional counsel or substitute counsel. At the time appointed counsel sought withdrawal. We're looking at that very narrow timeframe where the petitioner still had two lead attorney and second counsel.  So as I understand the claim, the court should have at that time in December of 1994, the court at that time, at that hearing, should have provided counsel because he was without counsel. He was deprived of counsel. I thought the argument included a claim that deprivation – in this case deprivation and ineffective assistance are synonymous. I don't understand in this case how they could not be. You have standing before the court the person charged with representing Mr. Crothers. And he is saying to the court, I won't represent him. I can't represent him. And by the middle hearing in January of 1996, Mr. Massey has his own counsel sitting with him in court. And ultimately he is allowed to get out. How can it not be ineffective assistance for an attorney to be arguing wholly and only before the court on his right to cease representation of this individual? And there's no one there to say, but Mr. Crothers acts this way because he's mentally ill. Or let me explain to the court what Mr. Crothers' side of this issue is. It seems to me no one represented him, and the fellow who was charged with it was definitely ineffective. Your Honor, I hope I provided an answer. I hope I provided one that clarifies my position here and answers Your Honor's question. I see them as distinct claims because ineffective assistance goes to the conduct of counsel. I would challenge the notion that he was deficient in representing to the court how he felt and whether he believed he could or could not represent him. Ineffective assistance goes to how he's conducting himself in these proceedings. And is he providing deficient performance while representing him? What performance in that argument on behalf of Mr. Crothers was he engaged in? Well, he was – I mean he was being honest and forthright with the court as to where he was at. I mean there's also statements he made where he will – he'll do the best he can. But he subjectively did not believe he could provide the best representation. So I guess my point is those are two very precise claims. Whether he's entitled to counsel immediately – I cited in the briefing that indicates that, in fact, they can be flip sides of the same coin, that sometimes denial of counsel or lack of counsel is ineffective assistance. Or ineffective assistance is effectively denial of counsel. Your Honor, I'm not aware of another case that parses it out the way that I am attempting to. But – And your argument hinges on this. That's where my concern lies. It seems that – let's put aside the during trial issue and let's talk about the real issue here. The three hearings that determined that he was not going to have counsel representing him on a death penalty case. And was the court required to provide him counsel when those proceedings began? Now, bear in mind he had two attorneys. And when that proceeding was beginning, the second attorney, the secondary attorney, was not moving to withdraw. That actually came later. But, of course, none of this was raised in state court. So we're looking at to what extent the court should consider extending Martinez to cover that. Because we really are looking to the conduct of counsel. I'm sorry, the conduct of the court. Should the court have intervened to provide counsel because of some apparent – something apparent to the court that the defendant did not have counsel? You have two options when an attorney is failing her job. You can either let it go and allow it to be raised on post-conviction, a claim of ineffective assistance, or you can take some steps at some point along the way. If you choose the latter, then you fall into Martinez, don't you? Meaning if you raise it on direct appeal? No, the former. I'm sorry. If you allow the attorney to go on, which is very frequently the case because we all make misstatements. And we all don't do everything perfectly. And attorneys are going to mess up. And judges are going to have to give them the leeway to try the case. It's their case to try. Sure. But if that is what goes on, then isn't it open to that defendant to then raise under Martinez a claim through Martinez if it was not raised appropriately and timely, a claim that this was ineffective assistance? The problem I have with expanding Martinez, construing it to allow that, is you're moving beyond a pure claim of ineffective assistance of counsel. You're looking to a claim that could be raised in the direct appeal process, unlike ineffective assistance of counsel. As conceded by your opposing counsel. Correct. This really kind of ties into, and they're slightly different analysis, but it ties into the second issue. In effect, the claim is he was deprived of counsel earlier than when counsel was removed. Now, some of the misconduct that supported that happened. We're not relying upon the misconduct prior to the December hearing to say he was deprived of, that it was okay to forfeit counsel because counsel wasn't yet forfeited. But it really is just backdating the claim of when he was deprived. And, I mean, the trial court, I think the transcript shows, was engaging in a good faith effort to move the case to conclusion, representing the right to counsel, providing that. And it became untenable to continue with this counsel because of the defendant's conduct. I hope I'm answering your Honor's question. It's just we see it as it is a distinct claim of deprivation of counsel. It's – and counsel cites Tucronic, which is an ineffective assistance case. And I don't cite to it that way because it's generally the right to counsel in a criminal case. Everyone agrees you have that right. Then it becomes whether it can be forfeited on the second issue. But here there was no state proceedings on the first issue. It's procedurally defaulted. And Martinez doesn't apply because it's not ineffective assistance of trial counsel. And it's a claim that could have been raised in the direct appeal process like the other deprivation of counsel claim was raised. And it's not a case where the court should expand upon the Martinez analysis. I would also note, and I'm not sure to what extent this informs the court's decision at this juncture, but under Tennessee state law, even if the claim had been raised in post-conviction, it would have been subject to waiver under 4030-106G because it could have been raised in the direct appeal. A claim is barred by state law in post-conviction if it could have been raised in the direct appeal. And I submit this is not ineffective assistance of counsel that could not, I mean, ineffective assistance of counsel could not have been. And we don't make that argument in state court in post-convictions that ineffective assistance is waived under 106G. This is different. The second issue, as I understand counsel's argument today, is that structural error may not be subject to default. Unless I missed something, I don't believe that was in the briefing. And so we did not address that. I'm not aware of any authority to that effect. It kind of ties into the third issue that's before the court today regarding competency, where the court looked to whether a competency claim could be defaulted. And this court in Hodges noted that for competency, there's a distinction between if a claim is subject to waiver, can it be defaulted? If you're looking in a direct appeal of a criminal case, state court, federal court, whatever, it very well may be that a claim is not subject to waiver under some state or federal rule that would prohibit review because an objection wasn't made or something of that nature. But this is habeas under the habeas statute and procedural default. I believe, again, I haven't addressed this in the brief because I don't believe it was raised. But the same rules of procedural default apply regardless whether the constitutional claim or the federal claim is structural or non-structural. So I don't believe that provides a basis to excuse the default. And this is not a case that would fall under the miscarriage of justice. You're not familiar with this Braley case that he's now citing? I'm not. I'm not. I have not reviewed that case, Your Honor. But again, I add the caveat, I haven't looked specifically at that. But my understanding walking in here today is that structural and non-structural constitutional errors are subject to the same exhaustion requirements. On the second issue, this I think really comes down to how you define the claim. Counsel defines it as a right to counsel where the Supreme Court has not provided for a forfeiture by wrongdoing exception to that. What the Tennessee Supreme Court was faced with, as any state court, highest court, addressing an issue of first impression, is to determine what the law is. The court looked to other jurisdictions, other state Supreme Courts, looked to federal case law, and many jurisdictions have a right to a first impression. And had concluded at that time that the right to counsel may be subject to forfeiture or waiver by virtue of misconduct of the defendant. Different courts had used different nomenclatures to describe that. What that court settled upon is a distinction between an implied waiver and a forfeiture. Acknowledging they're very similar. What concerned me about the Tennessee Supreme Court case was that it termed what it was doing as a sanction. And I just don't, and I think that was what I understood the argument by defense counsel. The fray tag argument, the concern that this implied waiver. I'm really struggling to get aboard a claim that you can act poorly enough that I can sanction you by taking away your counsel. I just can't get there, Counselor. Because that is underserved and sided with the, in fray tag, the concern of the defense counsel. The concern that your opposing counsel addressed was the Tennessee Supreme Court's cutting in half of its quotation to say, well, of course you can have relinquishment or abandonment as a sort of waiver, and then leaving off the, but other rights may not, which include the right to counsel. So I thought that was the kind of core, the gravamen of the argument. Well, and I can't quote you the exact language of the opinion. I don't read it as sanction, and I don't think the – Well, I'm not arguing with you, Your Honor. But the case law as it's developed on this case, the rationale is not as a sanction. It's because the right is provided, but the court can't carry forward because of the gross misconduct by – I agree with you. The conduct was horrendous. And there's no surprise that those attorneys said, I don't want to represent this guy because he's dangerous to me, my family, and my office. But my question to you is if that's what's going on, when you are at the point that the court is addressing that, doesn't the right to counsel entail that the person who is engaged in that sort of impropriety cannot be abandoned by his own attorney to get out of the case, but that the court must have someone there who speaks on behalf of that defendant? It's much like the historical cases that we spoke of where an incompetent defendant doesn't want to have a medical exam. And so the court appoints someone to come in and speak to the issue on his behalf, almost the guardian ad litem type of issue. How can he not be represented by someone who at least tells the court the other side of the issue? I think all components of the Tennessee Supreme Court's decision is what this court reviews. If the court believes that it includes – I mean the sanction language is not appropriate. Likewise regarding the cutting off of the footnote. There was dissent from a footnote in a concurring opinion of a U.S. Supreme Court case. I mean to the extent the court sees that as a misstatement or misconstruction, that informs this court's analysis. It can look at the Supreme Court decision in toto and determine is that contrary to or an unreasonable application of clearly established Supreme Court precedent as announced by that time. The next logical extension I would submit of the U.S. Supreme Court jurisprudence on this issue is that it would recognize that the right to counsel may be forfeited under some circumstances due to misconduct, but they never said that. Now many other lower courts came to that conclusion. And the U.S. Supreme Court chose not to step in to thwart that. I don't think that really informs this court's issue. I think that's kind of a practical observation. But this issue has percolated for decades. Lower courts have determined that it can be forfeited, but there's no Supreme Court decision on that point. Because of that, the Edpedeference under 2254D applies. I agree with your honor that the court has to look at all components of it. But the court has to read it as a whole and step back to determine can the right, the conclusion by the Tennessee Supreme Court that the right can be forfeited and the standard that it gave to support that and the facts presented, does that run afoul of the deference? One disagreement I have with the petitioner's argument here is it sort of attempts to kind of turn the Edpedeference into a sword, pointing out the fact, well, this U.S. Supreme Court has not recognized a forfeiture. Lower courts don't have to wait for the U.S. Supreme Court to directly address the specific issue before them before they can engage in the ordinary process of constitutional construction or statutory construction when you're looking at a statute of resolving a case, looking at how other jurisdictions have resolved the case, determining to what extent that is persuasive authority to inform it. I submit that's what the Tennessee Supreme Court did. It did ordinary judging by a state's highest court to resolve an issue of constitutional law of first impression. Edpede doesn't thwart that. In fact, as I've thought this issue through, if the second issue in this case now, if state court remedies had not been exhausted, if for some reason they weren't exhausted, but the default could be overcome, the federal district court would be looking at it anew. The federal district court would be bound by published precedent from this court that says, it has stated in federal criminal appeals that the right can be forfeited through misconduct. And it would then resolve whether the facts would present it under that. Edpede doesn't – its deference is provided by Edpede. It doesn't hamstring a state supreme court in its ability to resolve issues of first impression, which is what the court was called upon to do here. But I agree. All parts of that decision the court has to look at and weigh in determining whether ultimately the decision was contrary to or an unreasonable application of clearly established supreme court precedent. And our view under the facts, these were egregious facts. I've laid them out in the briefs. I know the court is well aware of them, that the facts – there's not an unreasonable application of the facts in the supreme court's resolution of the claim. I just had one last question. I didn't see in the record where the trial judge warned Mr. Carruthers of the dangers and disadvantages of proceeding pro se. Said he might have to proceed pro se, but did not expressly, explicitly warn him of the dangers and disadvantages of proceeding pro se. And that would appear to be a problem under Ferretta. So I know there's a distinction between implicit waiver and forfeiture. But I wonder if your stronger argument is that there's a forfeiture as opposed to implicit waiver given that arguable problem in the record. Your Honor, and I think most of the cases have looked at – they've looked at it in terms of forfeiture. If you're not construing a waiver based upon prior notice being given and then conduct happening, that really does appear more to be forfeiture. The Tennessee Supreme Court resolved it that way, but it obviously gave those two alternative conclusions that both either implicit waiver or forfeiture would support it. And I think certainly the forfeiture side of that, even if there is some issue regarding the admonitions and if he was not sufficiently informed, that that somehow undermines their implied waiver argument. We had that under forfeiture, which that would not be required for a forfeiture finding. Was there a determination – is there a determination in the record that Mr. Carruthers was competent to be his own counsel? I know that there is – there are determinations, a couple of them. There are competing determinations, but there are determinations that he was competent to stand trial. But representing yourself has a different standard of competency. Is there anywhere in this record a determination that he was competent to represent himself? I believe the only competency claim – the only competency determination was done before these proceedings, which was the – whenever there's a question of competency and there's a referral for an assessment. I believe there was – defense counsel retained an expert to study that further prior to trial. I believe that's all that we had. In light of this, was there not a necessity to determine whether he was competent to represent himself? Well, I think that turns on to what extent competency was even a question for the court. Because he was assessed competent to stand trial. I would submit that his proceedings don't necessarily call into question his competency. I mean it was egregious conduct, but I don't see it as really raising a question of competency such that the court – that is something the court should have explored before – or that it was required to explore before the forfeiture. There are two findings that he was competent to stand trial. Hudson, which is a one-pager, and then Zager, who I cannot even find his test or explanation in the record. And then after that you have Kenner, who found him incompetent to stand trial or represent himself. That was on post-conviction review. Yes, and then Montgomery, that he was – that he had personality disorders, not bipolar, that he could make rational choices, which is a stand trial. And then Agarcar, who said he was not competent to do either. But that's the extent to your knowledge. I believe so, and I think – I know Montgomery, and I believe the other one was also on the post-conviction review. That's when those assessments were done. So that the court is apprised of whether there is actually a mental incompetency involved. It's not to excuse him from the behavior. It's to raise the separate issue. Well, and I think it's a delicate issue that any criminal defense attorney is going to be in when they begin to question their ability to represent. But – and like in this case, Mr. Massey was very clear he didn't want to prejudice his right in any way, which is why he was very forthright with the court. But you also – I think you have to delicately try to work with the petitioner to determine what extent, if any, information can and should be shared with the court. Because, again, you don't want to violate any confidences because you're still representing that person. I think Mr. Massey was in a very – I mean, he was in a tough spot. I think I'm requesting what you think the court's role is when that goes on. Because we don't have – we don't have any transcripts from these meetings. But it is clear that counsel was telling the judge, here's what this guy's doing. And I guess perhaps not saying he's crazy, but saying I'm not willing to represent him because I think he's dangerous. So where does your understanding of how that issue gets before the court when the man or woman standing in front of the court is just trying to get out? And I think that comes with the trial court, which happened here, the trial court engaging with the petitioner to try to determine if he's dangerous. Is there a need for some type of attorney ad litem or something to represent his interest, something like a guardian ad litem to represent his best interest? The trial court has to do that. There's nothing really here that showed a need for that. This was egregious behavior that pretty apparent was in order to thwart the criminal process. He had continually engaged in this behavior and Mr. Massey just was bearing the brunt of it, the worst brunt of it. And I mean the defendant was not, in that process, was not being very clear. He wants Mr. Massey. Does he not want Mr. Massey? Does he want new counsel? Because he kind of goes back and forth during that very brief amount of time. So a trial court has to figure out how to respond. Yes, but he did not want Massey. But in the end, he said, I will work it out with Massey because I can't represent myself. But then Massey was allowed to leave, and he ended up representing himself. I don't want to speak negative of the petitioner. Both in the post-conviction review, there was back and forth changing of positions. I think Mr. Massey was in a very tough spot. Judge Daley was in a very tough spot. But the issue on that second issue was ultimately whether that violates expediteference. Generally speaking, the right can be forfeited and the facts here most certainly support that, such that there's not an unreasonable determination of those facts or application of them. Unless the court has further questions. Thank you. We ask the court to affirm. I want to give you the citation. It is 540 Fed Third 393. Yes, sir, and I apologize for not being able to do that earlier. The court has raised some difficult questions because there are very difficult questions presented here. And the heart of the matter is what Martinez says is that equitably, substantial claims must be heard somewhere, and there were a number of fundamental problems reflected on the face of the record relating to structural errors. And as Sullivan v. Louisiana notes, when that happens, the record is very difficult to parse. It is particularly difficult to parse when there's no attorney present to identify the procedures and the issues that are presented, which is the heart of the problem. My co-counsel corrected me. I won't tell you the name he called me, Judge Rogers, but he did say, well, of course, Sutton v. Carpenter says that Martinez applies to claims in Tennessee and to write to counsel issues which need not be raised on direct appeal and should not because doing so is fraught with peril. Here, with regard to the ineffective assistance of counsel claims, to the extent that counsel for the new trial motion was also counsel on direct appeal would have been conflicted from raising a dropped issue in the new trial motion on direct appeal or challenging his own effectiveness. One of the issues here that... It could not have because of a conflict, that's right. And why... Because I was not aware of Sutton v. Carpenter, and I apologize for that. With regard to ineffective assistance of counsel claims, right, Sutton v. Carpenter says they need not be and write to counsel claims, they need not be raised on direct appeal and doing so is fraught with peril. I don't have the case... I'm familiar with Sutton, but I thought that dealt with ineffective assistance of counsel. It does. Punitive aspect of this is also reflected in the record in the following circumstance. Massey offered to go back, despite the problem. And after there was time for some preparation, which he hadn't done because he hadn't even retained a mitigation specialist 20 days before trial, and the trial judge said no. And another lawyer propped up and said he would help, and the trial judge said no. That looks a lot like, if I can borrow the distinction in Cook v. United States, between civil and criminal contempt. That it was irremediable that Carruthers, by his behavior, had made his bed. When, as Chief Judge Cole, you said recently in a 2017 case that was clearly different, but it was a chronic claim at sentencing, and in the opinion it was Phillips v. White. And the court said, well, let's just agree on one thing. Before you go to trial, you need to have conducted some investigation. And particularly with regard to someone who has these behaviors, which were never adjudicated, at the trial court level, there was never any judicial determination that he was competent. And as the post-conviction court said, in agonizing about the mental health issues here, he said it was a perfunctory examination. There were clearly problems all over the place with regard to the records showing mental health problems. So our position in sum is that the right to counsel couldn't be more important, particularly at a critical stage. It was not provided that the questions that obtained now only underscore that. And that it fatally infected the entire proceedings that followed. And to label it an action based on his behavior, based on the record here, is problematic at best without a hearing in which he was represented by counsel to explore those issues. I have nothing further to say. I was, but I am now retired. Not today. No, on February 28th. It's not working out so well, as you can see. Well, we appreciate you taking the case under the Criminal Justice Act. It's a real service to Mr. Carruthers and to the court. And there being nothing further...